IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cr-40043-JPG |
| | ) | |
| KURT F. JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by and through Steven D. Weinhoeft, United States Attorney for the Southern District of Illinois, and William E. Coonan, Assistant United States Attorney, respectfully files its Sentencing Memorandum.

**I.     PRELIMINARY MATTERS - Presentence Investigation Report (PSR)**

The Second Revised PSR was filed on May 20, 2019. (Doc. No. 78). Initially, neither party objected to the PSR. On August 16, 2019, with counsel, the Defendant filed objections. (Doc. 94).

**II.    OFFENSE CONDUCT**

On January 8, 2018, the Defendant and his mother, Nell Leffel, through the use of the U.S. Mail, sent false and misleading filings and petitions to the U.S. District Bankruptcy Court in the Southern District of Illinois. These false and misleading mailings caused the U.S. Bankruptcy Court to open two Chapter 7 Involuntary Bankruptcy cases against W.T., Warden of Marion, and K.H., Intelligence Research Specialist for the Communications Management Unit (CMU). The Defendant claimed through these bankruptcy filings that both W.T. and K.H. were indebted to him, which was untrue. On February 21, 2018, the United States Bankruptcy Court for the Southern District of Illinois dismissed these petitions after the scheme was discovered.

The Defendant's scheme involved two Involuntary Petitions Against an Individual (US Bankruptcy Court Official Form 105) against both Warden W.T. and K.H. claiming he was owed $21,000,000,000 from a "judgment awarded by the World Court in Netherlands." The Defendant forgave $1,000,000,000 of the $21,000,000,000 and subsequently filed IRS Form 1099-Cs (Cancellation of Debt forms) in an attempt to defraud W.T., K.H. and 28 additional potential victims.

Additionally, the Defendant enlisted help from his mother, Nell Leffel; fellow inmate, Stephen Sherak; wife, Deborah Welsh; friend, Monya Ballah; father, Fred Johnson; Byron Gasher, and others to help facilitate the scheme. The Defendant recruited and directed Monya Ballah to file the 1099C's against the 28 additional potential victims. In addition to Defendant filing false petitions and documents with the United States District Court of the Southern District of Illinois (USDC SD/IL), Nell Leffel also filed false documents with the court at the direction of the Defendant. Several documents, authored by the Defendant related to filing fraudulent bankruptcies against prison staff, were discovered in Stephen Sherak's cell. Deborah Welsh and Byron Gasher contacted Nell Leffel and explain how to conduct research and file certain documents at the Defendant's discretion. Fred Johnson provided the Defendant assistance by coordinating mailings and communication with other individuals involved.

Defendant is currently serving a 300-month sentence at the Bureau of Prisons ("BOP") in Marion, Illinois. Specifically, the Defendant was convicted on November 14, 2007, of the offense of Conspiracy to Commit Mail Fraud and Mail Fraud in the United States District Court of Northern California, case number 3:05-cr-0611-002(WHA).

On September 26, 2018, a jury convicted the Defendant of all four of the offenses charged in the indictment. Following the trial in this case, the Defendant successfully smuggled two

letters out of the prison while being held in the Communication Management Unit (CMU). The letters made direct threats against Marion BOP, its staff, and the warden of the prison.

### III.   U.S.S.G. ADVISORY GUIDELINE CALCULATION

The first step for this Court is to properly calculate and consider the applicable advisory Guideline range. *See, e.g., United States v. Bush,* 523 F.3d 727, 729 (7th Cir. 2008). In this case, the government agrees with the Guideline calculation contained in the PSR (Doc. No. 78), which results in Offense Level 43 advising a term of imprisonment of 240 months, a fine range of $50,000 to $250,000, a supervised release term of 1-3 years for each count, and a $400 special assessment.

### IV.   FACTORS

The Supreme Court directed sentencing courts to consult the advisory Sentencing Guidelines and consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to determine a reasonable sentence. *See United States v. Booker,* 543 U.S. 220 (2005). Those factors are as follows:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promoted respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crime of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)

The Court must also consider the kinds of sentence available and the applicable category of offenses and category of defendant, as set forth in the Sentencing Guidelines and its policy statements, as well as the need to avoid unwarranted sentencing disparities and to provide restitution to victims. 18 U.S.C. § 3553(a)(3)-(7).

## V.     DISCUSSION

### 1.  The Nature and Circumstances of the Offense.

The nature and circumstances of the offense is serious, both in terms of the offense charged and the relevant conduct. It is useful to begin with the relevant conduct, because those actions pre-dated the offense charged. On January 8, 2018, while residing in the Communications Management Unit (CMU) located in the U.S. Penitentiary in Marion, Illinois, the Defendant devised a scheme to defraud W.T., the Warden of Marion, and K.H., the Intelligence Research Specialist for the CMU. The Defendant had not planned an ordinary scheme, rather, this scheme required extensive research and included multiple participants. Overall, the Defendant attempted to defraud a total of 30 victims, including W.T. and K.H., in a total amount of $21,000,000,000. His crime was no small price, rather, he wanted a tremendous amount of money which ultimately could have bankrupt his victims. In addition to the aforementioned crimes, the Defendant also threatened to file liens against the Clerk of Court and judges.

The Defendant was attempting to cause harm to these victims through the false petitions by affecting the victims' credit and making their personal information available on the District Court's Case Management Electronic Case Filing (CM/ECF) system. The CM/ECF system is publicly available to all consumer credit reporting agencies and legitimate creditors.

His crimes included extensive research and preparation, and included more than five participants to assist in the attempt to defraud government officials.

### 2.  The History and Characteristic of the Defendant.

The Defendant has an extensive criminal conviction history as outlined in the PSR at pages 7 through 11, paragraphs 32 through 42. The Defendant's criminal history began in January 1983 for reckless driving. The Defendant was sentenced to one year probation and five days' jail. The Defendant's license was suspended, but this did not deter him from driving. In

the following five and a half years, between January 1983 and October 1988, the Defendant was convicted of eight separate offenses. During this time period, the Defendant was sentenced to a total of 98 days in jail.

The Defendants fraudulent schemes began in January 1990 with the creation of Genesis International, Ltd. (Genesis), a Ponzi scheme to defraud investors of at least $8,000,000. The Defendant and his father, Fred Johnson, devised a plan to recruit sales representatives, who would invest $1,000 each in Genesis. In 1990, the Defendant obtained a false driver's license in the name of "K. Clayton Knight," which he used throughout the Genesis Ponzi scheme. *Id.* By the end of Genesis, the Defendant and his partners had issued approximately 13,000 promissory notes (signed by the Defendant), reflecting an investment of approximately $13,000,000 in Genesis between March 26, 1990, and September 13, 1991. The day Genesis was shut down, it had $250,000 in assets, yet owed $10,842,000 to its 7,228 current investors.

His fraudulent background does not stop there. On November 14, 2007, the Defendant was convicted of Mail Fraud and Conspiracy to Commit Mail Fraud and received a sentencing enhancement. Between November 12, 2002 and July 6, 2005, the Defendant conspired with multiple participants in a "debt/mortgage elimination" in an attempt to defraud approximately 20 lending institutions throughout the United States of approximately $6,611,065.73. In addition to the 20 lending institutions who were victimized by the defendant in that case, there were at least 2,500 homeowners who were victimized by the Defendant. Similar to the present case, the Defendant was the organizer and leader of the scheme.

Incarceration has not had any deterring effect on the Defendant either. While incarcerated on pre-trial status for the above "debt/mortgage elimination" scheme, the Defendant, and his co-defendant, filed fraudulent tax forms and other documents charging debt against judges,

5

Assistant U.S. Attorneys, and Bureau of Prisons staff. *Id.* They also filed a fabricated release order with a judge's signature.

In 2008, while incarcerated, the Defendant had mailed frivolous tax forms to the IRS naming two Arizona Superior Court Judges as having fiduciary relationship to Johnson. He claimed each judge was responsible financially to him in the amount of $100,000.

The Defendant is currently serving a 300-month sentence at Federal Bureau of Prisons, and is identified by the BOP as a "sovereign citizen" for his convictions of Mail Fraud and Conspiracy to Commit Mail Fraud out of the U.S. District Court in the Northern District of California. He has continually devised multiple fraudulent schemes in the past 28 years. Despite incarceration, with two separate convictions, the Defendant has not been deterred from committing crimes and continues to attempt to defraud victims. For example, following the trial in this case, the Defendant successfully smuggled two letters out of the prison which included direct threats against Marion BOP, its staff, and the warden of the prison.

    **3. Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment.**

A sentence within the Guideline range is reasonable in this case. This is because there are no extraordinary circumstances that diminish the reasonableness of the applicable Guideline range. Although records reflect the Defendant was recently awarded a monetary special award for stopping an inmate from assaulting or killing another inmate, the court should still find the Guideline range appropriate. The Defendant's fraudulent background demonstrates the Defendant lacks respect for the law. When punishment for serious offenses is imposed consistently and without disparity, respect for the law is promoted.

**4. Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant.**

The need for general deterrence deserves significant weight in the determination of the defendant's case. A sentence of two-hundred and forty (240) months of imprisonment is necessary to afford adequate deterrence to criminal conduct and protect the public from further crimes of the Defendant. Although W.T. and K.H. have not suffered any financial loss because of this offense, nor has their credit been effected, deterrence is still warranted because Bankruptcy Fraud has the ability to affect a victim's credit. Even though the victims were not directly harmed financially, this type of behavior, if left unchecked in a prison setting, can spread as a means to harass and intimidate wardens, staff members, and correctional officers.  These types of crimes must be deterred.  Defendant Kurt F. Johnson must also be personally deterred. It is unfathomable that he has continued fraud schemes despite two previous, separate convictions of mail fraud and selling unqualified securities. Most people who find themselves in criminal custody would have cause to reconsider their path. Instead of ceasing his criminal behavior, the Defendant has continued his fraudulent schemes.

**5. Need to Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner.**

The United States is unaware of any education or vocational training, care, or treatment that is needed by the Defendant. In 2006, the Honorable Judge Alsup signed an Order for Psychiatric Evaluation, in which the Defendant refused to participate. According to records received from the Federal Bureau of Prisons, the Defendant obtained his General Educational Development (GED) certificate on February 9, 2009.  During his current period of incarceration, he participated in 345 hours of educational courses, primarily in legal research, computer tech,

and typing,. The Defendant has a history of alcohol, marihuana, and cocaine use, but the record does not reflect other information regarding substance abuse history.

### 6. Kinds of Sentences Available and the Guideline Sentencing Range.

The PSR has addressed the kinds of sentences available. Based upon a total offense level of 43 and a criminal history category of III, the guideline imprisonment range is life. However, the statutorily authorized maximum sentences are less than the maximum of the applicable guideline range; therefore, the guideline range is 240 months of imprisonment, which is adequate to satisfy the factors under section 3553(a).

### 7. Need to Avoid Unwarranted Sentencing Disparities.

This provision does not apply, as there are no other co-defendants.

### 8. Provide Restitution to Victims.

Restitution does not apply in this case. The victims, W.T. and K.H., have not suffered any financial loss from this offense.

## VI. APPLICABLE LAW

The Guidelines are the "starting point and the initial benchmark" for determining a federal sentence. *Gall v. United States,* 552 U.S. 38, 49 (2007). However, a sentencing court may not presume that a Guideline sentence is reasonable, but must apply the factors set forth in 18 U.S.C. § 3553(a) in determining a reasonable sentence that is sufficient, but not greater than necessary to comply with the sentencing purposes set forth in § 3553(a)(2). *United States v. Johnson,* 635 F.3d 983, 988 (7th Cir. 2011). The key word in that sentence is "reasonable," for that is the standard applied by the Supreme Court. *Booker,* 543 U.S. at 260-62. "A sentence is reasonable if the district court properly calculated the guideline range and then exercised appropriate discretion in applying the factors specified in 18 U.S.C § 3553(a)." U*nited States v. Vaughn,* 614 F.3d 412, 414 (7th Cir. 2010).

The court can "impose a sentence outside the guidelines range so long as the judge explains why that sentence is appropriate under § 3553(a)." *United States v. Hill,* 645 F.3d 900, 911 (7th Cir. 2011). A sentencing judge "must adequately explain the chosen sentence to allow for meaningful review and to promote the perception of fair sentencing. *Gall,* 552 U.S. at 50. When the district court chooses to impose an above-guideline sentence, the judge "must consider the extent of deviation and ensure that the justification is sufficiently compelling to support the degree of variance" from the advisory guideline range. *Id.* "[A] major departure should be supported by a more significant justification than a minor one." *Id.*

## VII.   RECOMMENDATION

The United States respectfully recommends that the Court sentence the Defendant to imprisonment for 240 months, each count running consecutively. The United States submits these recommendations based on the continued fraudulent behavior by the Defendant. After two previous convictions and imprisonment, the Defendant continued to break the law and defraud victims. In consideration of section 3553(a) factors, the United States respectfully recommends that the sentence in the instant case and the Defendant's current 300-month sentence (Case No. 3:05-CR-0611-002 (WHA)) run consecutively.

    Respectfully submitted,

    UNITED STATES OF AMERICA

    STEVEN D. WEINHOEFT
    United States Attorney

    *s/ William E. Coonan*
    WILLIAM E. COONAN
    Assistant United States Attorney
    Nine Executive Drive
    Fairview Heights, Illinois 62208-1344
    618.628.3700

**CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2019, I cause to be electronically filed **United States' Sentencing Memorandum** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Robert Elovitz, Esq., Counsel for Defendant.

    Respectfully Submitted,

    *s/ William E. Coonan*
    WILLIAM E. COONAN
    Assistant United States Attorney